## Denlinger Estate.

Argued April 27, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Daniel H. Shertzer,* for appellants.

*Edgar R. Barnes, Jr.,* with him *Arnold, Bricker, Beyer & Barnes,* for appellee.

OPINION BY MR. CHIEF JUSTICE JONES, November 30, 1972:

This is an appeal from a decree of the Orphans' Court Division of the Court of Common Pleas of Lancaster County in which a request for a surcharge against the executor of decedent's estate was denied.

Ida B. Denlinger (decedent) died testate on February 2, 1968, naming Clayton Denlinger (appellee), her son, executor of her estate. At the time of her death, decedent owned and occupied a property in the City of Lancaster that was without water and sewage facilities, curbs and sidewalks. The property was appraised at $7,500 on March 12, 1968, and offered at public sale on April 6, 1968. The appellee rejected the highest bid of $6,600, having considered the appraisal, the feelings of other beneficiaries and suggestions of realtors at the sale.

The appellee thereafter made various efforts to sell the property, including listing the property for sale with two separate realtors and personally contacting prospective buyers. In May of 1968 a sales agreement for $8,000 was signed. The sale, however, was not consummated because the buyer was unable to secure a Federal Housing Administration approved mortgage.

On May 15, 1969, the property was cited for violations of a housing ordinance enacted after appellee's appointment as executor and, as a result, was designated "unfit for human habitation." Violations such as lack of water and sewage existed at decedent's death, whereas violations such as broken windowpanes and broken window sashes did not exist at her death. The

property was vandalized from time to time after decedent's death and prior to the ultimate sale.

A second public sale held some time prior to August 15, 1969, attracted no bidders. The appellee continued to attempt to sell the property during the fall and winter of 1969-1970. He rejected an offer of $300 during this period. However, on August 18, 1970, he sold the property for $500.

The lower court held, and the appellants concede, that the appellee could not be surcharged for rejecting the $6,600 bid. The court below properly relied on *Nemon's Estate*, 301 Pa. 425, 429, 152 Atl. 555, 556-57 (1930), where this Court, in denying a surcharge where a hotel for which an offer of $18,000 had been made was subsequently sold for $4,400, stated: "In Semple's Appeal, 189 Pa. 385, 390, quoting Neff's Appeal, 57 Pa. 91, this court said, 'executors, administrators or guardians are not liable beyond what they actually receive unless in case of gross negligence, for when they act as others do with their own goods, in good faith, and they are not guilty of gross negligence, they are not liable,' and in Waddell's Estate, 196 Pa. 294, 300, we said 'not a single authority is cited, not one can be found which imposes such a penalty as this surcharge, for mere error of judgment.' Many other decisions of this court to the same effect might be cited. Here the testimony shows the executors acted with common prudence and common caution and fails to establish negligence or bad faith; at most their failure to dispose of the hotel when first acquired by them was merely an error of judgment for which they are not chargeable."

Appellants complain, however, that the lower court erred by not surcharging appellee for his failure to maintain and preserve the real estate of the decedent. Appellants contend that the appellee's failure to properly repair and protect the property from vandalism

resulted in its sale for $500 approximately two and one-half years after it was appraised at $7,500. The lower court was unable to conclude that the appellee could have anticipated the vandalism or that it would have been reasonable to make repairs and thus refused to surcharge the appellee.

The fiduciary duty of an executor to maintain a decedent's property is statutorily created: "A personal representative shall have the right to and shall take possession of, *maintain* and administer all the real . . . estate of the decedent. . . . He shall collect the rents and income from each asset in his possession until it is sold or distributed . . . *and shall make all reasonable expenditures necessary to preserve it. . . .*" (Emphasis added)* The standard of care to which a fiduciary is held is well settled in this Commonwealth. He is required to use such common skill, prudence and caution as a prudent man, under similar circumstances, would exercise in the management of his own estate; and if he negligently causes a loss to an estate he may properly be surcharged for the amount of such loss. *E.g., Lohm Estate,* 440 Pa. 268, 269 A. 2d 451 (1970).

Taking the evidence as a whole, it is clear that the appellee's conduct in maintaining the property did not measure up to the requisite standard. By the summer of 1970, the property was, in the words of the appellee, "junk property." It was left vacant for almost two and one-half years. There is no evidence that the appellee took any steps to protect the property or maintain it in the condition in which he received it other than mow the grass during the summers of 1968 and 1969. Although the property was boarded up one and one-half years after decedent's death, the record is not clear whether this was done to protect the property or

---

* Fiduciaries Act of 1949, P. L. 512, Art. V, §501, 20 P.S. §320.501.

resulted from the property being cited for violating the housing code.

The appellee contends that the intervention of various events, while he was executor, caused the property to drastically decrease in value. It is difficult to see how the absence of water and sewage facilities, curbs and pavements contributed to this decrease in value since, by appellee's own testimony, the property was appraised in that condition at a value of $7,500. Furthermore, we do not believe that the deterioration of the property was caused by uncontrollable vandalism. Not all the deterioration resulted from vandalism—much of it resulted from the appellee's failure to repair. More importantly, the appellee's implicit contention that he had no duty to protect the property against vandalism must be rejected. While an executor may not be liable for unforeseeable, isolated acts of vandalism, he will have breached the trust imposed upon him where he leaves the property unprotected against known vandalism. Here, the only measure taken by the appellee to protect the property from recurring vandalism was to notify the police once. As noted above, it is unclear whether the appellee boarded up the property to protect it from vandalism. Even if he had intended to protect the property he still would not have exercised the requisite degree of care.

The appellee's lack of concern for the decedent's property is further evidenced by his failure to even try to rent the property. Had he rented the property he might not only have preserved it but would have produced income while trying to sell it.

Since the appellee cannot be surcharged with the losses which ordinary care could not have foreseen or guarded against, he should not be surcharged for any decrease in value caused by the enactment of the housing code. *Whitman's Estate*, 195 Pa. 144, 45 Atl. 673

(1900). Therefore, the appellee should only be surcharged for the decrease in the property's value caused by his failure to maintain and preserve it; that is, his failure to repair and protect the property from destruction by vandalism.

In holding this executor liable for his failure to maintain and preserve the decedent's property, we are mindful "that the office of administrator, executor, and guardian, is one of the highest and most absolute necessity in society; and in a great majority of cases is undertaken more out of kindness and duty, than with any hope or expectation of emolument, and is attended in its faithful discharge with trouble, anxiety and hazard." *Keller's Appeal,* 8 Pa. 288, 289-90 (1848). We emphasize, however, that an executor who by his neglect subjects his decedent's property to wrack and ruin will be held accountable.

Decree reversed and remanded for a determination of the amount of surcharge. Appellee to pay costs.