380 A.2d 773

In re ESTATE of Katherine Jane Wiest McCREA, Deceased.

**Appeal of W. H. McCREA, Jr., Individually and Iris W. McCrea, Executrix of the Estate of John McCrea, Deceased.**

Supreme Court of Pennsylvania.

Argued Jan. 11, 1977.

Decided Dec. 1, 1977.

George F. Douglas, Jr., Carlisle, for appellant.

Martson & Snelbaker, William F. Martson, J. Wesley Oler, Jr., Carlisle, for appellee, Sarah McCrea Chapman Jones.

McNees, Wallace & Nurick, Richard W. Stevenson, Harrisburg, for appellee, Farmer's Trust Co., Admr. DBNCTA.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

The Orphans' Court Division of the Court of Common Pleas of Cumberland County dismissed objections to the final account of the executor of the estate of Katherine McCrea. The orphans' court found that a settlement agreement among the devisees of the McCrea Estate did not exist

and imposed a surcharge upon the former executors. We affirm.[1]

Katherine Jane Wiest McCrea (Mrs. McCrea), whose husband had predeceased her by some thirty years, died testate on March 24, 1961. Her will divided her estate among her six children, Katherine, William, Sarah, Elizabeth, Margaret and John. Her will named as executors John, William, and Sarah, all of whom were law school graduates. At her death, Mrs. McCrea owned several farms in Cumberland County. Some structures on the property were rental units, and others were converted into rental units by the executors. The will contained no authority to continue the operation of either the farms or the rental units and the executors did not request permission, as required by 20 Pa.C.S.A. § 3314 (1975), to do so.

Following Mrs. McCrea's death in 1961, John and William continued operation of the properties. Their law partnership, McCrea and McCrea, used one building on the property as an office, and William lived in another building.

The executors made no attempt to file an account and wind up the estate for twelve years when, in late 1973, William filed a First and Final Account.[2] After a hearing on exceptions to the First Account, William filed a Supplemental Account, to which exceptions were also filed. Katherine filed a petition to remove the surviving executors. On April 8, 1974, after a hearing, the orphans' court revoked the Letters Testamentary issued to William and Sarah and directed Letters to be issued to appellee Farmers Trust Company.

Appellee's First and Supplemental Accounts sought to deny certain claims for expenses, commissions, and fees submitted by John's estate and William, to require William and his law firm to pay rent for the premises they occupied,

1. We hear this appeal pursuant to Section 202(3) of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, 17 P.S. § 211.202(3) (Supp.1977).

2. John had died in 1971, and Sarah did not participate in the preparation of the Account.

and to impose a surcharge of 3.5% per year on the value of property held by the former executors.[3] The orphans' court confirmed the Accounts absolutely, except as to the imposition of a surcharge on Sarah, who the court found had relied solely on the advice of her brothers.

William and Iris, the executrix of her husband John's estate, filed exceptions to the decree of the orphans' court. After a hearing, the court dismissed the exceptions. William and Iris (appellants) appeal.

Appellants contend that after Mrs. McCrea's death, the beneficiaries entered into a family settlement agreement by which each daughter would receive cash and John and William would receive the real estate and stocks and assume the debts of the estate.[4] The orphans' court found that no such agreement had been entered into.

Although family settlement agreements are favored because they avoid potentially divisive litigation, *Stancik Estate*, 451 Pa. 20, 301 A.2d 612 (1973); *Fry v. Stetson*, 370 Pa. 132, 87 A.2d 305 (1952), the existence of such an agreement must be clear and unambiguous, *Stancik Estate*, supra; *Braunschweiger's Estate*, 322 Pa. 394, 185 A. 753 (1936), and the agreement must be binding on all parties, *Stancik Estate*, supra. The orphans' court concluded that clear and unambiguous evidence of an agreement binding on all parties did not exist. This conclusion is supported by the testimony of the children of Mrs. McCrea. Sarah and Katherine testified that they had no recollection of an agreement among the devisees; appellant William's testimony, intended to demonstrate the existence of an agreement, in fact supported the conclusion of the orphans' court. According to William, Sarah and Katherine never agreed to the terms of the purported settlement.

"[I]n reviewing the decision of the orphans' court, our task is to assure that the record is free from legal error and to

3. The record indicates that the surcharge exceeded $60,000.

4. The real estate at the time of Mrs. McCrea's death was valued at approximately $39,000.

determine if the chancellor's findings are supported by competent and adequate evidence, and are not predicated upon capricious disbelief of competent and credible evidence." *Cohen Will*, 445 Pa. 549, 550, 284 A.2d 754, 755 (1971); *Garges Estate*, 474 Pa. 237, 378 A.2d 307 (1977); *Holtz Will*, 422 Pa. 540, 222 A.2d 885 (1966); *Hunter Will*, 416 Pa. 127, 205 A.2d 97 (1964). Thus the conclusion of the orphans' court that the evidence did not establish the existence of a settlement agreement may not be disturbed.

Appellants also argue that the orphans' court improperly imposed a surcharge upon the former executors. We do not agree.

An executor is required to exercise the same degree of judgment that a reasonable person would exercise in the management of his own estate. *Ellis Estate*, 460 Pa. 281, 333 A.2d 728 (1975); *Denlinger Estate*, 449 Pa. 393, 297 A.2d 478 (1972); see Restatement (Second) of Trusts § 174 (1959); II Scott on Trusts § 174 (1967). This duty includes the responsibility to distribute the estate promptly. 20 Pa.C.S.A. § 3316 (1975); *Wallis Estate*, 421 Pa. 104, 218 A.2d 732 (1966); *Jones Estate*, 400 Pa. 545, 162 A.2d 408 (1960); Restatement (Second) of Trusts § 6 (1959); I Scott on Trusts § 6 (1967). If the executor breaches this duty, he may properly be surcharged for interest on the assets not expeditiously distributed. 20 Pa.C.S.A. § 3544 (1975); *Jones Estate*, 400 Pa. 545, 162 A.2d 408 (1960); see *Ellis Estate*, supra; *Denlinger Estate*, supra.

The present case is similar to *Jones Estate*, supra, where we affirmed the imposition of a surcharge upon executors for failing to distribute the estate expeditiously. Executors in *Jones Estate* sold estate realty and neither distributed nor invested the proceeds from the sale. This Court stated:

"These executors, by their acts of commission and omission, delayed and postponed settlement of this estate so that, for a period of at least five years, funds, which could and should have been distributed to the beneficiaries by whom the funds could have been made productive, were allowed to remain idle and unproductive. Particularly is

this made evident by the fact that the executors converted extremely productive realty into non-productive cash, thus during the period pending final distribution depriving the beneficiaries of income to which they were entitled. The executors deprived the beneficiaries of estate assets which were productive and at the same time withheld distribution of the cash assets of the estate which the beneficiaries might have made productive. Regardless of a duty or lack of duty to invest estate funds on the part of these executors after the death of the life tenant, even when they had testamentary authority to invest, during the lifetime of the life tenant, they chose not to do so. The executors were gravely at fault and oblivious of the responsibility of their stewardship in the manner in which they administered this estate, through their action and inaction they permitted a status to continue where moneys rightfully due for distribution to the beneficiaries were allowed to remain in an unproductive state, while the corporate executor was permitted to employ such moneys for its own profits."

*Jones Estate*, supra, 400 Pa. at 560–61, 162 A.2d at 416.

■ As in *Jones Estate*, the evidence supports the imposition of a surcharge. The former executors, through their positions of trust, took control of the farm operations and all the accompanying realty. They made no effort to distribute the estate promptly. They never petitioned the orphans' court to allow continued operation of the farming business. See Pa.C.S.A. § 3314 (1975). Instead, the former executors delayed the final settlement of this estate for twelve years, and allowed the property to remain unproductive.

The former executors' failure to distribute the property over twelve years is inexcusable, particularly in view of the executors' legal training. See *Killey Trust*, 457 Pa. 474, 326 A.2d 372 (1974); *Mastria Estate*, 413 Pa. 278, 196 A.2d 653 (1964); *Glauser Estate*, 350 Pa. 192, 38 A.2d 64 (1944); see Restatement (Second) of Trusts § 174 (1959); II Scott on Trusts § 174.1 (1967). This breach of duty has deprived one devisee, Margaret, who died before these proceedings began,

of all benefits; it has deprived the others of their benefits until now.

Appellants assert that because the real estate in this case has appreciated in value since Mrs. McCrea's death—from an estimated $39,000 to an estimated $218,000—there has been no loss to the estate and its beneficiaries. We find this argument unpersuasive. It is hardly surprising that the value of the real estate has increased over the twelve years that appellants wrongfully withheld it from the beneficiaries. The beneficiaries have nonetheless been denied its beneficial enjoyment by the former executors' unwarranted delay. Nor do we see any reason to reach a different result because appellant William, and not one of the beneficiaries, took the initiative in bringing this matter to a final accounting. This was his duty as executor. 20 Pa.C.S.A. § 3316 (1975); *Wallis Estate*, supra.

Decree affirmed. Each party to pay own costs.

JONES, former C. J., took no part in the consideration or decision of this case.