470 A.2d 136

In re ESTATE OF Anastassios A. LYCHOS.

Appeal of BLOOMSBURG BANK, Co-Trustee.

In re ESTATE OF Anastassios A. LYCHOS.

Appeal of Artemis L. WEISS, Nadia Leonhardt and Xeria L. Filipos.

Superior Court of Pennsylvania.

Argued Feb. 3, 1983.
Filed Dec. 16, 1983.

76

M. Paul Smith, Norristown and Raymond J. DeRaymond, Easton, for Bloomsburg Bank, appellant (at No. 3298) and participating party (at No. 30).

John M. Bray, Washington, for Weiss, Leonhardt and Filipis, appellants (at No. 30) and participating parties (at No. 3298).

Arthur L. Piccone, Wilkes-Barre, for Lychos, participating party.

Before WIEAND, McEWEN and MONTGOMERY, JJ.

McEWEN, Judge:

Presently before this Court are cross appeals from the final decree of the Orphans' Court Division of the Court of Common Pleas of Northampton County which granted in part and denied in part a claim for surcharge asserted by Artemis L. Weiss, Xeria L. Filipos and Nadia Leonhardt [hereinafter appellants], against the Bloomsburg Bank—Columbia Trust Company [hereinafter Bloomsburg Bank]. Surcharges totaling $49,299.88 were imposed against the corporate co-trustee, Bloomsburg Bank, as a result of its administration of a testamentary trust established under the will of Anastassios A. Lychos. Appellants seek to increase the amount of the $49,299.88 surcharge imposed upon Bloomsburg Bank, while the Bank argues that the

Orphans' Court applied an incorrect standard of care and, therefore, improperly imposed the surcharges against it. The individual co-trustee, John O. Lychos, a sibling of the appellants, was not surcharged and requests this Court to affirm the final decree of the Orphans' Court.

Anastassios A. Lychos died testate on July 4, 1968. Letters Testamentary were granted to the Bloomsburg Bank—Columbia Trust Company and to John O. Lychos, the son of the decedent. The first and final account of the executors was confirmed on February 22, 1971 and the entire residuary estate was awarded back to the same fiduciaries as trustees of a testamentary trust. The trust created a life estate for the wife of the testator with remainder over to the four Lychos children. Income from the trust was the only income available to Mrs. Lychos other than social security.

The primary asset of the trust was a three-story commercial building situated on Main Street in Bloomsburg, Pennsylvania almost directly across the street from the Bloomsburg Bank. The property was valued in 1969 for estate purposes at $51,000.00. A subsequent appraisal conducted in 1972 for purposes of obtaining a mortgage on the property resulted in a valuation of $75,000.00.

The following facts relevant to the administration of the Lychos trust were found by the auditing judge:

At [the time of the decedent's death] the entire building was leased to one tenant at a rental of $400.00 per month. This lease was to expire in July, 1971, and the trustees immediately began negotiations for a new lease. After negotiations with the current tenant failed, the trustees, principally by the individual co-trustee, John Lychos, negotiated a lease with a podiatrist, Dr. Marvin Hughes. This lease, executed on November 15, 1971, provided for a term of ten years at a monthly rental of $1,000.00 with an option for a ten-year renewal. The lease further required the lessors to make certain repairs to the building and to install an elevator. The trustees had not obtained a firm price for the elevator when the lease was executed.

To finance the repairs required by the lease, the trustees placed a mortgage on the building in March, 1972. The amount of the mortgage was $50,000.00 with interest at the rate of 7½% per annum which resulted in monthly payments of $629.09, including an escrow for taxes and fire insurance. At this time the property was valued at $75,000.00 including building and land.

By June, 1972, most of the repairs to the building had been completed at a cost of approximately $22,000.00 and it had become apparent to the trustees that they didn't have sufficient remaining funds to install the elevator. This letdown was due to the fact that the bank used approximately $13,000.00 of the proceeds to satisfy the cash deficit carried over from the estate accounting and from the first year of the trust administration. Throughout this period and for the entire duration of the trust, the life tenant was paid $150.00 per month plus her household expenses, utility bills and taxes.[1]

Inexplicably, the bank held the $15,000.00 balance of mortgage proceeds in a non-interest-bearing account in its own institution from July of 1972 to July, 1973, when the balance of funds then remaining were invested in certificates of deposit. There was no evidence that the individual trustee participated in this decision. For two months in the summer of 1971 and from December, 1972, until the lease was terminated, the tenant unilaterally reduced the rent payment to $650.00 allegedly because the trustees had not installed the elevator. Although the trustees objected and demanded payment of the full rental, suit was not filed to enforce the lease until four years later, in September, 1976. An undetermined portion of this delay was occasioned by the discovery of a conflict of interest on the part of counsel retained to represent the trust who also represented the tenant. This litigation

1. Monies paid to Mrs. Lychos were paid primarily from principal after the Lychos building was mortgaged in March of 1972. The tenant was paying only $650.00 per month rent during this period while the mortgage payments which the trust was obliged to pay were in excess of $600.00 each month.

finally was successful and the trustees recovered the additional rent due to September, 1976 together with interest. An ejectment action resulted in a final decree in February, 1978. Again for reasons that are not clear, the trustees were required to file an additional law suit for the rental due between September, 1976 and the date of ejectment, and despite the prior court decisions, a jury verdict was for the tenant. No appeal was taken. Finally, on May 18, 1978, after the trustees' first account had been filed, the building was completely destroyed by fire. At that time the building was insured for $80,-000.00. The proceeds were used principally to satisfy the mortgage and to demolish the remaining structure. The land remains vacant. [footnote omitted and supplied].

The auditing judge, the Honorable Alfred T. Williams, Jr., surcharged the corporate co-trustee $1,125.00 for its negligence in depositing the $15,000.00 balance from the mortgage proceeds in a non-interest bearing account for a full year while the trust was obliged to pay interest at 7½% on the funds. The auditing judge also sustained an objection to the claim by the corporate co-trustee for $4,465.20 in commissions.[2] The objection to the claim by the corporate co-trustee for legal fees and costs in the amount of $4,338.68 was sustained in part and a surcharge of $1,735.47 was imposed against the counsel fees and costs claimed by the corporate co-trustee.[3] The objections and request for surcharge by appellants, based upon the corporate co-trustee's alleged failure to properly insure the building and for their alleged negligence in entering into a wasting and improvident lease were denied. The request for surcharge against the Bank for counsel fees incurred by appellants was also denied by the auditing judge. Exceptions to the adjudication and decree nisi of the auditing judge were filed by appellants and the Bank and, in re-

2. As a result, the Bank was awarded only $1,900.79 of the $4,465.20 it sought as commissions.

3. This resulted in the Bank being awarded $2,603.21 in legal fees and costs.

sponse thereto, the court en banc found that as a result of the negligent failure of the corporate co-trustee to properly insure the Lychos building, the trust sustained a loss of $45,000.00. A surcharge in that amount was therefore imposed upon the corporate co-trustee by the court en banc. The surcharge of $1,125.00 imposed by the auditing judge against the corporate co-trustee for failure to invest the mortgage proceeds was dismissed without explanation by the court en banc while the remaining surcharges imposed against the Bank were affirmed.

 " 'In reviewing the decision of the orphans' court, our task is to assure that the record is free from legal error and to determine if the chancellor's findings are supported by competent and adequate evidence, and are not predicated upon capricious disbelief of competent and credible evidence.' " *Estate of Brojack*, 321 Pa.Super. 154, 467 A.2d 1175 (1983) *quoting In re Estate of McCrea*, 475 Pa. 383, 386–387, 380 A.2d 773, 775 (1977). *Accord Estate of Hamill*, 487 Pa. 592, 601, 410 A.2d 770, 774 (1980); *In re Trust Under Deed of LaRocca*, 485 Pa. 236, 239, 401 A.2d 746, 748 (1979). Our standard of review with respect to the factual findings of the auditing judge is clear: " 'The credibility of the witnesses and the weight to be given their testimony is in the first instance to be determined by the auditing judge. His findings of fact, affirmed by the court en banc, like those of a jury, are conclusive unless they are unsupportable by the record.' " *In re Estate of Lux*, 480 Pa. 256, 263, 389 A.2d 1053, 1056 (1978) *quoting Gelb Estate*, 425 Pa. 117, 125, 228 A.2d 367, 372 (1967).

## I. STANDARD OF CARE APPLICABLE TO BANK

Bloomsburg Bank contends that the auditing judge and the court en banc erred in holding that the Bank, as a professional fiduciary, was required to exercise a greater degree of skill and care than that of an ordinary, prudent person. We disagree.

██ "Every fiduciary is obligated, in managing the investment of trust assets, to exercise the care, skill, and

judgment of an ordinarily prudent person unless it either has or procures its appointment by representing that it has greater skill, in which case it is obligated to exercise such greater skill." *In re Estate of Stetson*, 463 Pa. 64, 74 n. 4, 345 A.2d 679, 684 n. 4 (1975). *Accord Estate of Knipp*, 489 Pa. 509, 512, 414 A.2d 1007, 1008 (1980); *Killey Trust*, 457 Pa. 474, 477, 326 A.2d 372, 375 (1974).

■ The auditing judge found that the Trust Department of Bloomsburg Bank, headed by a man with fifteen years experience in the administration of trusts, held itself out as an expert in trust administration. The auditing judge also found that a substantial portion of all commercial properties located in the Bloomsburg area were managed by the Trust Department of Bloomsburg Bank. The auditing judge concluded, therefore, that Bloomsburg Bank possessed greater skill in the administration of trusts, investments and commercial real estate than an ordinary, prudent man and had procured its appointment as co-trustee as a result of its representations of greater skill. Those findings of fact of the auditing judge, affirmed by the court en banc and supported by the record may not be disturbed on appeal. *In re Estate of Lux, supra*, 480 Pa. at 263, 389 A.2d at 1056. The conduct of the Bloomsburg Bank in administering the Lychos trust must, therefore, be reviewed in light of the expertise of the Bank in such matters. *See In re Mendenhall*, 484 Pa. 77, 81–82, 398 A.2d 951, 954 (1979).

■ Similarly, we are bound by the findings of the auditing judge, supported by the record, that John O. Lychos possessed only the skill and expertise of an ordinary, prudent person. The auditing judge, therefore, properly concluded that John O. Lychos was obligated to exercise such common skill, prudence and caution as a reasonable and prudent person, under similar circumstances, would exercise in dealing with his own property. *See Lohm Estate*, 440 Pa. 268, 273, 269 A.2d 451, 454 (1970). *See also Killey Trust, supra*, 457 Pa. at 479, 326 A.2d at 376.

## II. FIRE INSURANCE

Appellants argue that the court en banc erred in denying their request for a surcharge against the Bank for failure to insure the Lychos building for its full replacement cost value, while the bank contends that the court en banc erred in imposing a surcharge against it for failure to insure the building for its actual cash value.[4] Neither argument has merit and the surcharge of $45,000.00 imposed against the Bank will, therefore, be affirmed.

The auditing judge held that the corporate co-trustee was not required to carry full replacement cost insurance on the building and refused, therefore, to impose a surcharge against the bank for failure to purchase such insurance. The request by appellants for surcharge for failure to insure the building for actual cash value, however, was also refused by the auditing judge on the grounds that the decision was in part based upon the severe cash flow problem of the trust. The court en banc reversed this holding, based upon the findings of fact made by the auditing judge that the cash flow problem had been created by the failure of the bank to collect the full rental due on the building and its failure to invest the balance of the proceeds from the mortgage in an interest bearing account. The court en banc, therefore, imposed a surcharge of $45,-000.00 against the Bank, which represented the difference between the actual cash value of the building and the amount for which the building had been insured by the Bank.

A primary duty of a trustee is the preservation of the assets of the trust. The Decedents, Estates and Fiduciaries Code provides, *inter alia*, that a trustee "shall have

---

**4.** Estimates of the replacement cost value of the building varied from $279,000.00 to $409,000.00. Estimates of the actual cash value of the building varied from $95,000.00 to $166,000.00 depending upon the depreciation factor applied by the witness. "Replacement cost value" is the actual cost of repair or replacement of the building without deduction for depreciation. *Canulli v. Allstate Insurance Company,* 315 Pa.Super. 460, 463, 462 A.2d 286, 287 (1983). " 'Actual cash value,' is the actual cost of repair or replacement less depreciation." *Id.,* 315 Pa.Superior Ct. at 462, 462 A.2d at 287.

the right to and shall take possession of, maintain and administer each real and personal asset of the trust, collect the rent and income from it, and make all reasonable expenditures necessary to preserve it." 20 Pa.C.S. § 7131. *See also Estate of Hamill, supra,* 487 Pa. at 602 n. 7, 410 A.2d at 775 n. 7; *Denlinger Estate,* 449 Pa. 393, 396, 297 A.2d 478, 480 (1972). "It is well-settled in this Commonwealth that a fiduciary who has negligently caused a loss to an estate may properly be surcharged for the amount of such loss." *Lohm Estate, supra* 440 Pa. at 273, 269 A.2d at 454. *Accord In re Estate of Lux, supra* 480 Pa. at 264, 389 A.2d at 1057; *Estate of Stephenson,* 469 Pa. 128, 138, 364 A.2d 1301, 1306 (1976); *Denlinger Estate, supra* 449 Pa. at 396, 297 A.2d at 480. Once a beneficiary has succeeded in proving that the trustee committed a breach of duty and that a related loss occurred, the burden shifts to the trustee to prove that the loss would have occurred in the absence of the breach of that duty. *Estate of Stetson, supra,* 463 Pa. at 84, 345 A.2d at 690.

■ The auditing judge and the court en banc found that the Bank had breached its duty by entering into a $50,-000.00 mortgage prior to ascertaining the amount of funds necessary to renovate the building, by failing to assist in the lease negotiations, by failing to properly administer the lease and by failing to timely institute proceedings against the tenant. The court en banc found that these breaches of duty by the Bank had resulted in the decision not to increase the insurance. The Bank failed to establish that it would not have insured the building for its actual cash value in the absence of the breaches by the Bank which had created the cash flow problem in the trust. We find, therefore, that the court en banc properly imposed a surcharge against the bank in the amount of the loss suffered by the trust as a result of the failure by the Bank to insure the Lychos building for its actual cash value.

■ At the same time, we reject the argument advanced by appellants that the Bank was under a duty to insure the Lychos building for its full replacement cost

value. The duty of the trustee is to preserve the corpus of the trust. However, the trustee is not a guarantor or insurer of the success of the trust, *Killey Trust, supra* 457 Pa. at 480–481, 326 A.2d at 376 (Roberts, J. concurring), and is not under a duty to replace the asset new in the event of a loss. The duty of the trustee to preserve the assets of the trust is faithfully discharged where the assets of the trust are insured in the amount of their actual cash value. Such insurance guarantees that in the event of destruction of the corpus, the trust is reimbursed in the amount of the actual cash value of the asset and, therefore, no loss is suffered by the trust. In the absence of any loss there can be no surcharge imposed against the trustee.

## III. MORTGAGE PROCEEDS

Appellants argue that the court en banc erred in dismissing the surcharge of $1,125.00 levied against the Bank by the auditing judge for its failure to invest the $15,000.00 balance of the mortgage proceeds in an interest-bearing account. We agree. Bloomsburg Bank obtained a $50,000.00 mortgage on the Lychos building in order to obtain funds for repairs and the installation of the elevator required by the lease with Dr. Hughes. The Bank, however, never obtained an estimate for the cost of installing an elevator shaft in the building and, therefore, entered into the lease and obtained the mortgage without knowledge of the actual cost of providing the elevator. The Bank used $22,000.00 of the mortgage proceeds to make repairs to the building, which the auditing judge found to be necessary and proper. Approximately $13,000.00 of the proceeds were used to pay debts carried over from the administration of the estate which included commissions claimed by the Bank. The remaining monies, approximately $15,000.00, were placed in a non-interest bearing account in the Bank and remained there for one year. During this entire period, however, the trust was obligated to pay interest at $7\frac{1}{2}\%$ per annum on these monies. The auditing judge found, and we agree, that the failure of the Bank to invest these monies in

an interest bearing account was a clear breach of its fiduciary duty, resulting in a loss to the estate. See and compare: *In re Estate of Pitone*, 489 Pa. 60, 67–68, 413 A.2d 1012, 1016 (1980); *In re Estate of Vaughn*, 315 Pa.Super. 354, 461 A.2d 1318 (1983). The auditing judge, therefore, properly surcharged the Bank in the amount of the loss suffered by the estate. The court en banc dismissed this surcharge, possibly on the grounds that any interest earned would have been expended for increased insurance benefits. However, once appellants established that a breach of duty by the Bank caused a loss to the estate, the burden shifted to the Bank to prove that the loss would have occurred in the absence of its breach. *In re Estate of Stetson, supra* 463 Pa. at 84, 345 A.2d at 690. The order of the court en banc which dismissed the surcharge against the Bank for failure to invest the mortgage proceeds is, therefore, reversed. On remand the court is to reimpose the $1,125.00 surcharge for failure to invest the mortgage proceeds subject, however, to reduction in the amount which the trust would have expended in increased insurance premiums for proper insurance coverage.

## IV. COUNSEL FEES, COSTS AND COMMISSIONS

The auditing judge granted in part the request by appellants for surcharge against the counsel fees, costs and commissions claimed by the Bank and surcharged the Bank $2,564.41 against commissions and $1,735.47 against counsel fees claimed by the Bank. The request for a surcharge in the amount of counsel fees paid by appellants was denied. Both the Bank and appellants allege that the auditing judge erred.

"[T]he allowance of a fiduciary's commission, as well as counsel fees, is primarily within the discretion of the auditing judge, and his action ordinarily will not be disturbed except for clear error." *Dowman Estate*, 156 Pa. Super. 655, 659, 41 A.2d 339, 340 (1945) allocatur denied April 13, 1945. *Accord Lohm, Estate, supra* 440 Pa. at 277–278, 269 A.2d at 456; *Mastria Estate*, 413 Pa. 278, 283,

196 A.2d 653, 655–656 (1964). *See also Estate of Wanamaker*, 314 Pa.Super. 177, 180, 460 A.2d 824, 825 (1983). Our review of the record herein discloses no abuse of discretion or error of law on the part of the auditing judge in imposing these surcharges. However, the auditing judge based the surcharge against counsel fees claimed by the bank upon criteria which are no longer viable.[5] Therefore, upon remand the auditing judge may reevaluate the amount of surcharge to be imposed upon the counsel fees claimed by the Bank. *See Lare Estate*, 436 Pa. 1, 14–15, 257 A.2d 556, 564 (1969).

 Similarly, we find no error on the part of the auditing judge in refusing to award counsel fees to appellants. "The general rule is that each party to adversary litigation is required to pay his or her own counsel fees." *Estate of Wanamaker, supra*, 314 Pa.Super. at 179, 460 A.2d at 825. *Accord Chatham Communications, Inc. v. General Press Corp.*, 463 Pa. 292, 300–301, 344 A.2d 837, 842 (1975);

V. LEASE

Appellants argue that the Orphans' Court erred in denying their request for surcharge against the Bank in the amount of the alleged profits realized by the tenant, Dr. Hughes, from subletting portions of the building.

The Bank delegated the responsibility for the selection of a suitable tenant as well as for the negotiation of a lease to the individual co-trustee, John O. Lychos, who, in turn, by reason of a lack of special skill or expertise in real estate matters, relied on the advice of counsel provided by the Bank in negotiating certain terms of the lease. The fact that the attorney for the Bank was also the attorney for the tenant was unknown to the Bank or John Lychos until the day the lease was signed. The lease as executed provided for a monthly rental of $1,000.00 over the first ten years of the leasehold and required the trust to make certain repairs

5. The auditing judge based this surcharge upon a percentage derived from a comparison of the number of objections sustained in relation to the number dismissed.

to the building as well as to install an elevator. The lease also granted the tenant an option for a second ten year term. No provision against subletting was included in the lease, nor was there a provision requiring the tenant to share with the trust any profits realized as a result of subletting portions of the building. The auditing judge found it "shocking that a corporate trustee would permit an individual co-trustee to assume full responsibility for negotiating a lease to a building which was the sole asset of [a] trust." He concluded that the Bank had breached its fiduciary duty to utilize its superior skills in commercial real estate matters by delegating all responsibility for the lease agreement to John O. Lychos. A surcharge was denied, however, because the auditing judge found that *no loss* to the trust had resulted from the lease because the monthly rental of $1,000.00 was "competitive with similar properties in Bloomsburg." Appellants do not dispute the findings of the auditing judge that the monthly rental was a competitive one, rather, they argue that the Bank should be surcharged for the amount of profits Dr. Hughes realized from subletting. We disagree.

"It is well-settled in this Commonwealth that a fiduciary who has negligently caused a loss to an estate may properly be surcharged for the amount of such loss." *Lohm Estate, supra* 440 Pa. at 273, 269 A.2d at 454. *Accord Denlinger Estate, supra,* 449 Pa. at 396, 297 A.2d at 480 (1972). *See also Estate of Stephenson, supra,* 469 Pa. at 138, 264 A.2d at 1306. However, evidence that Dr. Hughes realized a profit as a result of subletting portions of the building is not evidence that the trust suffered a loss by entering into the lease with Dr. Hughes. The auditing judge found that the lease was a commercially reasonable one, competitive with leases for similar properties and considerably more profitable for the trust than the prior lease which provided for a total monthly rental of $400.00. We are bound by those findings, which are supported by adequate and competent evidence. The conclusion of the auditing judge that the trust did not suffer a loss as a result of

the lease precluded the imposition of the surcharge urged by appellants. Hindsight is not the test of liability for surcharge, as a trustee is not a guarantor or insurer of the success of the trust. *See Estate of Knipp, supra,* 489 Pa. at 512, 414 A.2d at 1008. "The exercise of investment skills greater than those possessed by the average man, as is required of a corporate fiduciary, which holds itself out as an expert, does not *guarantee* results better than [the] average person may have achieved during the same investment period." *Estate of Knipp, supra,* 489 Pa. at 512, 414 A.2d at 1008. (emphasis in original.) *See also Mereto Estate,* 373 Pa. 466, 469, 96 A.2d 115, 116–117 (1953). Moreover, had the Bank attempted to lease individual portions of the building as suggested by appellants, there may well have been periodic vacancies, resulting in a monthly income to the trust of less than the $1,000.00 provided for in the lease with Dr. Hughes.

## VI. UNCOLLECTED RENTS

Appellants also argue that the auditing judge and the court en banc erred in refusing to impose a surcharge against the Bank in the amount of the monies not recovered by the trust in the second action against Dr. Hughes for rent arrearages.

As noted above, an action was instituted in September of 1976 against Dr. Hughes for rent arrearages. Due to what the auditing judge characterized as a "procedural error" committed by counsel for the trust, the judgment entered against Dr. Hughes included only monies due up to date of the filing of the complaint. A second action instituted by the Bank for the monies due from September 1976 until the termination of the leasehold resulted in a judgment for the tenant. The auditing judge refused to surcharge the Bank for the rent not recovered in the second action because he believed appellants were bound by the decision of the jury in the second action that $650.00 per month was the fair rental value of the building without an elevator. Appellants argue that a surcharge should be imposed against the

Bank for negligent failure to plead all damages in the first action.

A trustee may, under certain circumstances, be surcharged for the negligent acts or omissions of counsel employed by the trustee. *See In re Estate of Stetson, supra* 463 Pa. 64, at 80, 345 A.2d 679, at 688 (1975); *In re Trust of Mintz,* 444 Pa. 189, 200, 282 A.2d 295, 301 (1971); *Lohm Estate, supra* 440 Pa. at 275, 269 A.2d at 455. However, while we believe that a surcharge is appropriate in the instant case, our decision is not based upon a finding of any negligence on the part of counsel but, rather, upon the breach of fiduciary duty by the Bank in failing to assist in the negotiation of the lease with Dr. Hughes.

As was noted above, the auditing judge refused to surcharge the Bank for its failure to participate in the lease negotiations only because the auditing judge found that no loss to the trust had resulted from what the auditing judge found to be a "shocking" breach of duty by the Bank. The finding of the auditing judge that no loss had resulted to the trust was based upon his finding that a rental of $1,000.00 per month was "competitive with similar properties in Bloomsburg." The auditing judge found that the building, under proper management, should have produced an income of $1,000.00 per month. Therefore, the Bank should be surcharged in an amount sufficient to compensate the trust for those periods for which the full rental of $1,000.00 per month was not received. Where a breach of duty results in a loss to the trust, the trustee is liable for surcharge in the amount of the loss. *Estate of Stephenson, supra* 469 Pa. at 138, 364 A.2d at 1306. On remand, therefore, a surcharge on the amount of the rents not recovered in the second action should be imposed against the Bank.

Decree affirmed in part and vacated in part. Case remanded for further proceedings consistent with the foregoing opinion.

Jurisdiction is relinquished.