In re ESTATE OF Julius E. DURAN, Jr., deceased.

Appeal of Timothy M. REDLINGER.

Superior Court of Pennsylvania.

Argued Nov. 14, 1996.
Filed April 2, 1997.

Joseph M. Wymard, Pittsburgh, for appellant.

Michael Fiffik, Pittsburgh, for appellee.

Before HUDOCK, FORD ELLIOTT and HESTER, JJ.

HUDOCK, Judge:

This is an appeal from an order dismissing the claim of Appellant Tim Redlinger (Redlinger) against the Appellee estate of decedent Julius E. Duran, Jr. (the Estate). After careful review, we reverse.

The salient facts and procedural history surrounding this matter are as follows: Julius E. Duran, Jr., also known as Jay Duran (Duran), was the majority shareholder of Jay Duran Associates, Inc., a corporation involved in the rental and sales of audio-visual equipment. Redlinger began working for the corporation in 1971 and continued working through February of 1992, approximately six months after Duran's death in August of 1991. During his tenure with the corporation, Redlinger became concerned that he did not have any retirement benefits. On March 18, 1987, Duran met with Redlinger to discuss the topic of a retirement plan for Redlinger's benefit. Later that day, Duran executed a document promising to purchase a

$50,000 life insurance policy with Redlinger as the beneficiary until a retirement plan could be set up. The letter, which was typed on company letterhead, read as follows:

March 18, 1987

> I, Jay Duran, promise to purchase an insurance policy on myself for $50,000 with Tim Redlinger as sole beneficiary, in the interim of establishing a retirement plan for Tim, which will consist of $100,000 and represents contributions and accumulated interest retroactive to Tim's 21st year of age, August 20, 1976. When the retirement plan is established, I will change the beneficiary of the life insurance plan to whomever I choose.

JAY DURAN ASSOCIATES INC.

/s/ *Jay Duran*

Jay Duran

JD/tk

After Duran's death, it was determined that he apparently neither purchased a life insurance policy for Redlinger's benefit nor set up a pension plan. Thereafter, Redlinger made a claim against the Estate, asserting that he was entitled to benefits under the above contract. The Estate contended that Redlinger, being unable to liquidate the interest in the insurance policy, had tendered the original contract back to Duran in exchange for monies. Redlinger claimed these monies were loans, paid for through payroll deduction of raises he received later.

On September 18, 1995, the trial court heard conflicting testimony from Redlinger, various co-workers, Jay Duran Associates, Inc.'s counsel, and various beneficiaries under the will as to Duran's intent in executing the contract. Redlinger testified that he began working for Jay Duran Associates in 1971, while he was still in high school. N.T., 9/18/95, at 2. He stated that after he got married, he became concerned about his lack of benefits and threatened to leave the company due to his fear that something would happen to Duran. *Id.* at 4. Redlinger testified that Duran's counsel, Robert S. Adams (Adams), was present during discussions regarding the policy discussed in the letter. *Id.* at 6, 27. He also stated that he thought Duran was obligating himself personally in

the contract to take out a life insurance policy for his (Redlinger's) benefit. *Id.* at 33.

Theresa Kumanchik, Duran's personal secretary at the time of the letter, testified that on March 18, 1987, Duran, Adams, and Redlinger met in Duran's office for about one-half of an hour. *Id.* at 41. Thereafter, she stated that Duran called her into his office and dictated the letter. She testified that after she typed the letter, Duran proofed it. He did not ask her to remove the Jay Duran Associates, Inc. or take it off the corporate letterhead. *Id.* at 52. She further agreed that Duran was precise in his business dealings. *Id.*

Linda Snyder, Duran's daughter, testified that she was aware that Redlinger had threatened to leave Duran's company based on his lack of security. *Id.* at 60. She testified that in February of 1987, she suggested to her father that he could take out an insurance policy for Redlinger's benefit until a pension plan could be established. *Id.* at 62. She also testified that raises later received by Redlinger were not in lieu of the insurance policy. *Id.* at 82. Linda Snyder testified that she believed the obligation to be a personal one. *Id.* at 86.

Adams testified that he knew nothing about the letter until Redlinger presented a copy of it to him *after* Duran had died, in December of 1991. Likewise, Betty Curtis, who is executrix of the estate and was Duran's fiancee, and Lori Patek, another daughter of Duran, also testified that they knew nothing of the letter until December of 1991. Finally, Olga Gibson, who was a billing and collections clerk for Jay Duran Associates, Inc., testified that there was no doubt in her mind that Duran signed the letter in the capacity of a corporate obligation. *Id.* at 137. She did admit, however, that she may not have known about personal obligations of Duran. *Id.* at 142–43.

On October 27, 1995, the trial court entered findings of fact and conclusions of law. The trial court found that Duran was a majority shareholder of Jay Duran Associates, Inc. The trial court further found that Duran was acting as an officer of the corporation on March 18, 1987, when discussing the retirement plan with Redlinger. The court

also found that Duran gave Redlinger a copy of the typed document. Further, the court determined that Duran bound the corporation and not himself by the March 18, 1987, letter. Moreover, the court determined that insufficient evidence existed to pierce the corporate veil or to hold Duran liable under a participation theory. Therefore, the court entered an order dismissing Redlinger's claim for $100,000 plus interest against the Estate. On November 6, 1995, Redlinger filed exceptions to the order. Thereafter, a three-judge court *en banc* dismissed the exceptions. This timely appeal followed.

Redlinger raises the following issues for our review:

Did [Duran] act in an individual capacity in promising [Redlinger] that he would establish a retirement plan for him and that, in the interim, he would purchase a life insurance policy for his benefit?

Assuming arguendo that [Duran] acted solely in a corporate capacity in making the foregoing promises, do equitable grounds exist for piercing the corporate veil?

Redlinger's Brief, at 3.

The Estate offers the following counter-statement of questions presented:

I. WHETHER THIS [sic] COURT'S FINDING THAT THE DECEDENT, [DURAN], DID NOT BIND HIMSELF PERSONALLY WITH THE AGREEMENT OF MARCH 18, 1987 IS SUPPORTED BY SUFFICIENT EVIDENCE?

II. WHETHER [REDLINGER] FAILED TO PRESENT SUFFICIENT EVIDENCE WARRANTING THE DISREGARD OF THE CORPORATE ENTITY OF JAY DURAN ASSOCIATES, INC.?

III. WHETHER THE CONTRACT PURPORTED TO EXIST BETWEEN [DURAN] AND [REDLINGER] IS UNENFORCEABLE DUE TO A LACK OF CONSIDERATION?

Estate's Brief, at 2.

Preliminarily, we observe that:

" 'In reviewing the decision of the orphans' court, our task is to assure that the record is free from legal error and to determine if the chancellor's findings are supported by competent and adequate evidence, and are not predicated upon capricious disbelief of competent and credible evidence.' " *Estate of Brojack,* 321 Pa.Super. 154, 467 A.2d 1175 (1983) *quoting In re Estate of McCrea,* 475 Pa. 383, 386–387, 380 A.2d 773, 775 (1977). *Accord Estate of Hamill,* 487 Pa. 592, 601, 410 A.2d 770, 774 (1980); *In re Trust Under Deed of LaRocca,* 485 Pa. 236, 239, 401 A.2d 746, 748 (1979). Our standard of review with respect to the factual findings of the auditing judge is clear: " 'The credibility of the witnesses and the weight to be given their testimony is in the first instance to be determined by the auditing judge. His [or her] findings of fact, affirmed by the court en banc, like those of a jury, are conclusive unless they are unsupportable by the record.' " *In re Estate of Lux,* 480 Pa. 256, 263, 389 A.2d 1053, 1056 (1978) *quoting In re Gelb's Estate,* 425 Pa. 117, 125, 228 A.2d 367, 372 (1967).

*In re Estate of Lychos,* 323 Pa.Super. 74, 82, 470 A.2d 136, 140 (1983).

The threshold question to resolve is whether Duran intended to undertake a personal or corporate obligation. Redlinger argues that Duran was acting in an individual capacity. He maintains that personal liability is suggested because the body of the document contains only references to the singular "I." He asserts that it is not unusual for the primary owner of a company to use company letterhead for both personal and corporate business and that personal liability is not voided by the presence of a corporate name tied to the signature. Further, Redlinger maintains that any ambiguity should be construed in his favor. Finally, he contends Duran's statement that he intended to change the beneficiary of the life insurance policy to whomever he selected after setting up the pension indicates a promise that only he could make.

In response, the Estate argues that it was clear that Duran was acting on behalf of Jay Duran Associates, Inc. in executing the document at issue. The Estate emphasizes the fact that the letter was typed on company

letterhead and included a corporate affiliation above the signature line. Additionally, the Estate argues that Redlinger failed to provide evidence showing that the liability incurred was personal to the decedent.

■ As both parties acknowledge, "[i]t is a basic tenet of agency law that an individual acting as an agent for a disclosed [principal] is not personally liable on a contract between the [principal] and a third party. unless the agent specifically agrees to assume liability." *Vernon D. Cox & Co., Inc. v. Giles*, 267 Pa.Super. 411, 415, 406 A.2d 1107, 1110 (1979) (citations omitted). In the instant matter, there is no question as to whether there was a disclosed principal: Redlinger was clearly aware of Duran's position with the company. Thus, if Duran was acting on behalf of Jay Duran Associates, Inc. in drafting the March 18, 1987, letter, he may not be held liable on the obligation absent a personal assumption. However, a person who is contracting as an agent may be found to be personally liable where he or she either executes a contract in his or her own name or "voluntarily incurs a personal responsibility." *Pennsylvania Gas & Water Co. v. Nenna & Frain, Inc.*, 320 Pa.Super. 291, 303, 467 A.2d 330, 336 (1983) (citing *Kiska v. Rosen*, 181 Pa.Super. 506, 124 A.2d 468 (1956)). Therefore, if Duran made the contract in his name or willingly undertook a personal obligation, he can be found to be individually liable on the pledge.

Herein, the trial court found the agreement was unambiguous. The court stated:

Despite [Redlinger's] arguments to the contrary, I find this agreement to be unambiguous. It is clear from the corporate letterhead and the signature line that Duran is signing on behalf of Jay Duran Associates, Inc. The language in the body of the agreement also evidences a corporate obligation. The purpose of the agreement is to establish a retirement plan for an employee of the corporation. Further, [Redlinger's] consideration to the contract

was his promise to stay in the employ of Jay Duran Associates. (Trial Transcript, p. 9). It is clear to this Court that [Redlinger's] promise only benefits the corporation to which he was employed.

Opinion, 4/19/96, at 4.

Having found the contract to be unambiguous, the trial court did not have to look to extrinsic evidence to determine that the obligation was corporate. *See Krizovensky v. Krizovensky*, 425 Pa.Super. 204, 210–212, 624 A.2d 638, 642, *alloc. den.*, 536 Pa. 626, 637 A.2d 287 (1993) (If a contract is found be unambiguous, the intent of the parties is to be determined by the words used in the contract.) We disagree with the trial court's finding that Duran did not incur a personal liability.

■ Initially, we observe that the determinations of the ambiguity of a contract and its interpretation are questions of law properly before this Court. *Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 200–202, 519 A.2d 385, 390 (1986). However, any parol evidence used in interpreting ambiguous portions of agreements are restricted to the factfinder. *Id.* Here, we concur that the contract is not ambiguous and agree that the ultimate obligation to set up a pension plan was on the corporation. Nevertheless, from our reading, we conclude that Duran clearly undertook a personal obligation to purchase an insurance policy on his life in the *interim* before the establishment of a pension plan by the corporation. The mere presence of the corporate name above the signature line does not exclusively indicate corporate liability. *See Viso v. Werner*, 471 Pa. 42, 48–49, 369 A.2d 1185, 1188 (1977), ("the mere signature of the appellant preceded by the word 'by' and following the typed name of the corporation on the corporation's letterhead is not *conclusive* that he was acting in a representative capacity, *if* the alleged contract showed an intent to bind appellant individually.") (Emphasis in original).[1] Here, we do

1. In *Viso, supra*, the appellee had sued both appellant Werner and Werner Contracting Co. for breach of contract. The breach was alleged to be based on a proposal typed on Werner Contracting Co. letterhead and signed, " 'Respectfully submitted, Werner Contracting Co.

By: s/Michael N. Werner.' " *Id.* at 1186. An invoice attached indicated that the check was to be made to Michael N. Werner. The trial court found both the individual, Werner, and the company liable due to defective paving work. This Court affirmed. *Id.* at 1187. Werner took ap-

not find the use of the corporate letterhead or closing line determinative because we agree that the corporation ultimately benefitted from the agreement. However, we find that Duran's promise in the letter to purchase an individual policy, as part of the basis of the contract, resulted in his personal liability up to the amount of the $50,000.00 policy. *See McKee v. Moon*, 400 Pa.Super. 161, 583 A.2d 5 (1990) (where contract indicated president of corporation would individually guarantee payment, president was found to be individually liable on debt).

The Estate contends that the use of the first person in the letter is not dispositive and argues that Duran was the only person with authority to purchase insurance on behalf of the corporation. Conversely, Redlinger argues that only Duran as an individual could choose to insure his life for the benefit of any beneficiary he chose "without regard to whether the beneficiary had an insurable interest in his life." Redlinger's Brief, at 12. We agree.

In pertinent part, 40 P.S. section 512 states:

> No policy of life insurance shall be delivered in this Commonwealth except upon the application of the person insured.... [P]ersons, copartnerships, associations and corporations may insure the lives and health of officers, directors, principals, partners, and employes, without the signing of a personal application as hereinbefore required. Any person may insure his own life for the benefit of any person, copartnership, association, or corporation, but no person shall cause to be insured the life of another, unless the beneficiary named in such policy or agreement of life insurance, whether himself or a third person, has an insurable interest in the life of the insured.

*Id.*

Under this statute, Duran, as an individual, could choose anyone he desired as a bene-

ficiary. The question of a beneficiary requiring an insurable interest only comes into consideration when one individual takes out an insurance policy on the life of another. The beneficiary of such a policy must have an insurable interest in the life of the insured. While a corporation may take out a policy on the life of an officer, the letter herein states that Duran planned to take out a policy on himself and would change the beneficiary to whomever he chose. We find this clearly indicates Duran's intention to undertake a personal obligation. Our resolution of this issue renders Redlinger's second question moot on appeal.

On a final note, the Estate contends that the contract is unenforceable due to a lack of consideration. The Estate argues that, as an at-will employee, Redlinger offered nothing new in consideration of the agreement. We observe that although the trial court mentioned that Redlinger's consideration for the agreement was his decision to remain with Jay Duran Associates, Inc., this issue was not presented for the trial court's determination. Nor were findings of fact or conclusions of law made as to consideration underlying the contract. As we have no decision to review, we decline to consider this issue on appeal.

Order reversed; the trial court is directed to enter an order in favor of Redlinger for $50,000 plus interest, as determined by the trial court. Jurisdiction relinquished.

---

peal. The Pennsylvania Supreme Court reversed, finding that no evidence was introduced to indicate that Werner entered into a contract with the appellee. The *Viso* Court emphasized that the company letterhead, use of first person plural (the opinion does not further clarify what tense was used), and the signature suggested that the individual was contracting on behalf of the company. *Id.* The *Viso* Court also noted that the fact that the corporation had one shareholder was not a reason to ignore the corporate form. *Id.* at 1188. The instant case is distinguishable based on our finding that Duran specifically undertook an individual promise.