

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-17-2006

# Austin Powder Co v. Popple Constr Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4671

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Austin Powder Co v. Popple Constr Inc" (2006). *2006 Decisions.* Paper 1561.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1561

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No.  04-4671

AUSTIN POWDER COMPANY

v.

POPPLE CONSTRUCTION, INC.,

Appellant

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 01-cv-01931)
Magistrate Judge: J. Andrew Smyser

Argued on November 15, 2005

BEFORE:  ROTH, FUENTES and BECKER, Circuit Judges

(Opinion Filed:  February 17, 2006 )

Raymond P. Wendolowski, Esquire (Argued)
P.O. Box 1313
Wilkes-Barre, PA  18703

Counsel for Appellant

John P. Rodgers, Esquire (Argued)
Wetzel, Caverly, Shea, Phillips & Rodgers
15 Public Square, Suite 210

Wilkes-Barre, PA  18701

Counsel for Appellee

OPINION

**ROTH,** <u>Circuit Judge</u>:

## I.  Factual and Procedural Background

Our case begins in the Pleistocene Epoch of the Quarternary Period of the Cenozoic Era, during the last Ice Age, when glaciers covered much of Northeastern Pennsylvania and woolly mammoths, not-so-woolly mastodons, giant sloths, and saber-toothed cats roamed throughout that area.  As the glaciers melted and retreated, they disgorged the debris trapped inside the ice to form sedimentary deposits known as glacial tills ("overburden" or "dirt").  Compacted by glacial weight, glacial tills are extremely dense, solid ground, and provide an excellent foundation for building.            Fast-forward some twenty-thousand years to the most recent part of the Holocene Epoch, when Proctor and Gamble (P&G) decided to build an immense warehouse in Meshoppen, Wyoming County, Pennsylvania.  P&G's general contractor for the warehouse was the Norwood Company.  In August 2000, Norwood entered into a written subcontract with Popple Construction, Inc., a Pennsylvania corporation, to provide construction services and materials.  Popple in turn subcontracted orally with the Austin Powder Company, an Ohio corporation, for blasting services.  The oral subcontract provided that Austin

2

Powder would provide blasting services in accordance with the project's Blasting

Guidelines.

The relevant provisions of the Blasting Guidelines provided that:

B. Explosive and Blasting: Use and store explosives in accordance with requirements of Federal, State and Local laws, rules, regulations, precautions, orders and decrees. No blasting permitted within 200 feet of existing water transmission mains, piping, and conduits. Additionally comply with following:

1. Assume sole responsibility for injury to person or property as a result of explosives and blasting...

8. Acceptance of blasting data and techniques does not relieve the Contractor's responsibility to exercise proper supervision and field judgment to produce specified results.

12. Use controlled blasting techniques. Modify blasting round as necessary to achieve best obtainable results and to keep air blast overpressure, vibrations and noise within limits specified. Exercise care in drilling and blasting operations to minimize overbreak and blast damage of adjacent unexcavated ground. Assume responsibility to produce a satisfactory excavated surface by determining proper relationships of factors of burden, spacing depth or charge quantity and type of explosive, hole size and delay patterns and other necessary considerations to achieve required results.

The ground in the vicinity of the construction site in Meshoppen was virgin

ground, which had not been disturbed for many years. It consisted of both glacial till and

solid bedrock. The topography of the warehouse site was not level. In order for

construction to commence, the ground had to be leveled to the appropriate grade. This

was to be done by blasting the rock that was above grade and then using the blasted rock

to fill in the areas that were below grade. The blasting needed to be undertaken with care

lest glacial till also be blasted. Till can be removed more easily and cheaply with

standard construction equipment, and, more importantly, blasting can upset the structural integrity of the compacted till by fluffing the dirt. A structure built on blasted till will sink into the fluffed ground. In this case, construction plans called for preservation of at least four feet of subgrade glacial till for sinking the footings of the warehouse.

As part of its blasting operations, Austin Powder employed the services of various subcontractors to drill blasting holes at appropriate depths in the ground. If a blasting hole is dug too deep, overblasting will result and material that is to be left intact will be disturbed. Drilling subcontractors know whether they are drilling in dirt or rock by watching the hammer pressure gauge on the drill. After the blasting holes were dug, Austin Powder placed explosives in the holes and detonated them.

Work was progressing well until Austin Powder was discovered to be blasting supergrade dirt; if dirt was encountered above grade, it was to be removed without blasting. When confronted with its mistake, Austin Powder agreed to refrain from future overblasting and to credit Popple with the costs of this overblasting. Later in the construction process, after footers for the warehouse had been poured, subsurface settling was notice at an interior pier location and subsurface failure was noticed in wall foundation areas where footers had been poured.

Mid-Atlantic Engineering Company, which was responsible for assuring proper compaction for the footings, was asked to investigate these problems. Mid-Atlantic found that the subsurface settling and failure occurred because the blasting holes had been drilled too deep. As a result, Austin Powder had blasted subgrade dirt in both areas and

4

had disturbed the glacial till's structural integrity. Not only had Austin Powder overblasted and fluffed the subgrade glacial till in which the footers were to be placed, but Austin Powder also blasted out some eight to twelve feet of bedrock underlying the subgrade till.

Remediation of these problems required excavating the fluffed ground and replacing it with manufactured stone in the case of the interior pier and with compaction grouting in the case of the footers. Popple remediated the interior pier area at an its own expense and was back charged by Norwood for the cost of remediating the footers.

Popple withheld payment of $196,411.79 from its blasting contract with Austin Powder to cover the remediation expenses of the sub-grade blasting and the costs of the improper above-grade blasting. In October 2001, Austin Powder filed a suit for breach of contract against Popple in the United States District Court for the Middle District of Pennsylvania. The District Court had subject matter jurisdiction over the action under 28 U.S.C. § 1332. Popple filed a counterclaim for the costs of remediation and impleaded several other parties, all of whom were eventually dismissed from the action.

In November 2004, after failed mediation attempts and a bench trial, the Magistrate Judge found in favor of Austin Powder in the sum of $157,310.30. The Magistrate Judge found that the Blasting Guidelines had not been violated and that Austin Powder had no contractual duty to avoid the loosening of the glacial till. The Magistrate Judge also found that Mid-Atlantic's attribution of fault in its investigation was incorrect because Mid-Atlantic itself was the party responsible for assuring adequate compaction

5

for the footer locations; had Mid-Atlantic performed the correct compaction tests, the cost of remediation would have been less.

Popple filed this timely appeal. We have jurisdiction over the appeal from the District Court's final order under 28 U.S.C. § 1291. In an appeal from the verdict of a bench trial, we undertake a plenary review of the District Court's conclusions of law, Kosiba v. Merck, 384 F.3d 58 (3d Cir. 2004), but review conclusions of fact for clear error. Id. Here, there is a dispute as to whether we are reviewing a conclusion of law or of fact. The key factual points of this case are not in dispute–Austin Powder did overblast and this caused a loosening of the glacial till. The District Court held that Austin Powder did not violate any provision of the Blasting Guidelines, and the appeal concerns whether overblasting was a breach of contract.

Under Pennsylvania law,[1] the interpretation of contractual language to determine the parties' intent is a question of law, In re Estate of Duran, 692 A.2d 176, 179 (Pa. Super. Ct. 1997); Hutchison v. Sunbeam Coal Corp., 519 A.2d 385, 390 (Pa. 1986), and the meaning of a contract is determined by the contractual language, unless it is ambiguous. Hullett v. Towers, Perin, Forster & Crosby, Inc., 38 F.3d 107, 111 (3d Cir. 1994). Therefore, the question of whether the Blasting Guidelines were violated is a

---

[1] The parties have not addressed what law applies to their verbal agreement, but they cite only Third Circuit and Pennsylvania cases, and the District Court assumed Pennsylvania law applies. Therefore, rather than under taking the full Pennsylvania choice-of-law analysis, we proceed with the assumption that Pennsylvania law applies, but note that under Ohio law too, contract interpretation is a question of law, Latina v. Woodpath Dev. Co., 57 Ohio St. 3d 212, 214 (Ohio 1991), and that we would reach the same results in this case if we decided it under Ohio law.

question of law, not of fact, and our review is plenary.

For the reasons below we affirm the District Court's judgment for the Austin Powder Company.

## II. Discussion

### A. Did Austin Powder Breach Its Contractual Duties?

Under Pennsylvania law, to establish a breach of contract claim, a plaintiff must prove the existence of a contract, including its essential terms, a breach of the duty imposed by the contract, and resultant damages. Pittsburgh Constr. Co. v. Griffith, 834 A.2d 572, 574 (Pa. Super. 2003). There is no dispute regarding the existence of an oral contract between Austin Powder and Popple or that the oral contract incorporated the project's Blasting Guidelines by reference. Instead, the question before this Court is whether the terms of the contract were breached.

### i. Did Popple Waive Its Blasting Guidelines Argument?

As a preliminary matter, Austin Powder claims that Popple waived its contractual argument relating to the Blasting Guidelines. Specifically, Austin Powder claims that Popple did not argue at trial or set forth as a proposed finding of fact any alleged violation of the Blasting Guidelines. In support of this waiver claim, Austin Powder relies on the District Court's finding that "No violation of any provision of the Blasting Guidelines *is set forth as a proposed finding of fact* by defendant Popple Construction." Memorandum and Order of November 24, 2004 at 14, ¶34 (emphasis added).

Austin Powder's waiver argument is without merit. First, in its counterclaim,

Popple alleged that the Blasting Guidelines were part of the contract and that Austin Powder breached the contract. Counterclaim, ¶¶ 4-5. Moreover, although the District Court correctly noted that a violation of the Blasting Guidelines was not set forth by Austin Powder as a proposed *finding of fact*, the question of whether the Blasting Guidelines were violated is a question of law and was included properly in Popple's proposed Conclusions of Law. Proposed Findings of Fact and Conclusions of Law of Defendant/Counterclaim Plaintiff, Popple Construction, Inc., Conclusions of Law, ¶¶ 1-4, 6. Austin Powder had adequate notice of Popple's argument, which was not waived.

### ii. Did Austin Powder Violate the Blasting Guidelines?

Popple claims that Austin Powder violated three different provisions in the Blasting Guidelines, Sections, B.1, B.8, and B.12. Section B.1 of the Guidelines imposed the duty on Austin Powder to "[a]ssume sole responsibility for injury to person or property as a result of explosives and blasting..." Popple argues that the loosening of glacial till was an injury to property, for which Austin is liable. This reading stretches the contract language. It is apparent to us that this section of the Guidelines was intended to cover damage to people and property *other than the soil*. Consistent with this conclusion is the fact that Austin Powder was employed to damage the soil by blowing it up. The Guidelines, however, do not specify how much soil Austin Powder was to "damage." Because the blasting of the soil was within the realm of proper performance, it did not constitute an injury. Thus, Austin Powder is not liable under Section B.1 of the Blasting Guidelines.

8

Section B.12 of the Blasting Guidelines required Austin Powder "to *minimize* overbreak and blast damage of adjacent unexcavated ground." (Emphasis added). The provision does not make Austin Powder liable for any damage; it is merely precatory. Essentially it requires care, not specified results. Indeed, this Section of the Guidelines foresees that there will be some damage to the ground as a result of blasting. There is no evidence that Austin Powder did not exercise care or attempt to minimize overbreak or blast damage. Thus, Austin Powder did not violate this part of Section B.12.

Section B.8 of the Guidelines notes that Austin Powder was required "to exercise proper supervision and field judgment to *produce specified results.*" (Emphasis added). Similarly, section B.12 required Austin Powder to "Assume responsibility to produce *a satisfactory excavated surface* by determining proper relationships of factors of burden, spacing depth or charge quantity and type of explosive, hole size and delay patterns and other necessary considerations to *achieve required results."* (Emphasis added). While these provisions required Austin Powder to provide a satisfactory excavated surface, it did not require that Austin Powder leave a surface suitable for building without additional work such as compaction or excavation to form the base upon which to erect footers or floors. The limited nature of Austin Powder's duties is clear because had Austin Powder encountered supergrade till, it was not supposed to blast, but instead to let other subcontractors reduce the elevation to grade. In such a scenario, Austin Powder would not have left a surface ready for construction but would undoubtedly have fulfilled its contractual obligations for reducing the elevation. It is apparent, therefore, that Austin

9

Powder's duties did not extend to final preparation of construction surfaces.

The phrases "specified results" and "required results" do not indicate what was required or specified. In the context of the complex and ill-defined delegation of responsibilities within the Meshoppen warehouse project, we are chary of finding this language to impose duties on a blasting subcontractor beyond its specific job—blasting. The job for which Austin Powder was engaged was to reduce an elevation to close to grade by blasting. Blasting is by nature somewhat imprecise; a blaster cannot be expected to leave a perfect surface or reduce an elevation exactly to grade and level. Thus, we read the phrase "satisfactory excavated surface" as a requirement that sufficient blasting be carried out, not that Austin Powder, a blasting subcontractor, leave a finished surface that could be built upon without additional work. Popple complains that Austin Powder blasted too much, but Austin Powder also had to be careful not to blast too little. In this case, the Blasting Guidelines are simply too imprecise to engender contract liability for blasting beyond grade. The nature of the project foresaw that compaction or filling would be needed in many places to create a level surface at grade. As the Magistrate Judge correctly noted in his ruling:

> The duty to ascertain adequate soil compaction upon which to construct footers (or that the surface was down to bedrock) was not explicitly or implicitly undertaken by the blasting contractor under the agreement or otherwise. If upon excavation to the indicated subgrade elevation the excavation had not reached bedrock, then the contractor responsible for constructing footers had to assure that there was a sufficiently firm footing upon which to construct footers, just as was the case at other project locations where the sub-building base was comprised of fill. This was a very fast moving project, and duties were not fully and carefully delineated and overseen. It was not Austin Powder's contractual duty to blast to the point of

10

reaching bedrock at every footer location.  Much of the project would involve fill to achieve grade.  Austin Powder was contractually committed not to charge for overblasting as that concept was contractually defined.  That commitment did not impose on it a duty to assure a firm footer foundation at particular locations.

Memorandum and Order of November 24, 2004 at 17.

In sum, then the Blasting Guidelines do not saddle Austin Powder with a duty to avoid the loosening of glacial till but merely required Austin Powder to take due care in blasting, undertake sufficient blasting so as to reduce the elevation to close to grade, and assume responsibility for damage caused by blasting other than to the dirt being blasted. The bottom line is that the contract only required Austin to get "close enough" to grade, not exact results, and Austin Powder fulfilled all of its responsibilities and was not in breach.

### iii.  Did Austin Powder's Crediting of Popple for Blasting Dirt Evince a Contractual Obligation Not to Blast Dirt?

Popple contends, in the alternative, that the Blasting Guidelines, incorporated into the oral contract, were ambiguous and that Austin Powder's crediting the blasting of dirt shows that Austin did have a contractual obligation not to do so.  We are unconvinced. What was essentially an offer of settlement in the context of an on-going contractual relationship is hardly reliable evidence for the terms of the contract.  Cf. F.R.E. 408 (settlements or offers of settlements are inadmissible to prove liability).  There are myriad reasons why a subcontractor without a contractual duty might be willing to credit a contractor for disputed costs.  Issues of reputation and the desire for repeat business could well figure into such a good-will gesture.  Austin Powder's crediting Popple for the costs

11

incurred in the blasting of dirt cannot itself be the basis of contract liability.

Therefore, because Austin Powder was not in breach, Popple breached its contractual obligations by withholding payment from Austin Powder, as the District Court properly found.

**B. Did the District Court Err in Finding that Mid-Atlantic Incorrectly Attributed the Subsurface Settlement and Failure to Austin Powder Rather than to Its Own Lack of Diligence?**

Popple also appeals the District Court's findings of fact that Mid-Atlantic's attribution of fault for the subsurface settlement and failure to Austin Powder should not be afforded significant weight. The District Court so found because Mid-Atlantic itself was responsible for much of the cost of remediation since it had the contractual duty to assure adequate compaction at prospective footer locations and would have discovered the problems with subsurface compaction had it performed adequate tests.

We note that problematic confluence of contract and tort (or "contort", see Grant Gilmore, The Death of Contract) in this case, as the contract essentially invokes a negligence standard of care, and the District Court's consideration of Mid-Atlantic's fault pulled the tort doctrine of superceding cause into a contracts case. Nonetheless, Popple's appeal of the findings of fact is only relevant to the measure of damages if we had found that Austin Powder breached its contractual duties, not the question of liability. Because we determine that Austin Powder did not violate its contractual responsibilities, we need not reach judgment on the question of whether Mid-Atlantic, which is not a party to this

12

appeal, violated its contractual duties. Popple has not appealed the District Court's damages calculations. We will affirm the District Court's judgment in favor of Austin Powder on both its claim and Popple's counterclaim.

Becker, *Circuit Judge*, dissenting.

As the majority acknowledges, the Blasting Guidelines are part of the contract between Austin and Popple. Guideline B-12 provides:

> 12. Use controlled blasting techniques. Modify blasting round as necessary to achieve best obtainable results and to keep air blast overpressure, vibrations and noise within limits specified. Exercise care in drilling and blasting operations to *minimize overbreak and blast damage of adjacent unexcavated ground*. Assume responsibility to produce a satisfactory excavated surface by determining proper relationships of factors of burden, spacing depth or charge quantity and type of explosive, hole size and delay pattern and other necessary considerations to achieve required results.

(Emphasis added). Focusing on the italicized portion, I cannot agree with the majority that the language is precatory. Rather, I view the language as imposing a clear obligation on an experienced drilling contractor, with which it did not comply.[2] I believe that the District Court made a clear error of law in finding that the Guideline was not violated.[3] I therefore respectfully dissent.

---

[2]Austin Powder unnecessarily blasted in overburden and below grade in violation of its contract, and the resulting soil disruption caused extensive damage.

[3]To the extent that the District Court found that Mid-Atlantic was the culprit, it erroneously imposed tort law theory on a contract dispute.

13